By the Court. —Sedgwick, J.
The language of the policy that the application and representation made on May 31st, 1872, to the Empire Company, by the *300 assured, “apply to and are made a part of this policy, and warranted true by the assured,” is explicit. A resort to extrinsic circumstances could not be allowed to change its plain meaning. Nor do the facts, adverted to by the learned counsel for the respondent, for the purpose of unfolding the real meaning, in fact tend to show that the intent of the parties was that the application and its representations were to be tested, by its truth or falsity, on the day of its date, May 31, 1872. These facts are that the first policy of the Empire Company was surrendered, that the assured or the plaintiff made no direct application for the present policy, but some agreement was made, the terms of which are unproved, in reference to the assumption by the defendant of the outstanding risks of the Empire Company, and that the defendant received as part consideration, a note which had been credited on the first policy. These facts combined, do not make it improbable or unreasonable that the defendant should refuse to insure a life as to which the occurrences of the preceding five months had changed the chances of its duration. In May, 1872, the Empire insured in view of probabilities, based upon facts represented to be true, by the assured. In October, 1872, the defendant, about to insure, for the premium charged by the Empire, would naturally base its calculations upon the continuance of the facts represented to the Empire. If, in the mean time, the assured had been subject to cough, or had a sickness or disease, for which a physician was consulted, the defendant was not called upon to consider these actual facts, nor was it likely that it would, as having the same relation to its insurance that the non-occurrence of them before May 30, 1872, had to the policy of the Empire Company.
But the contract speaks for itself. The representations contained in the application to the Empire were *301 made part of the policy, in this case. The representation, therefore, was, that on October 2,1872, the defendant had not been attended by a physician within seven years, &c., &c.
It does not seem to be a material fact, even if it were the case that the plaintiff, or her husband, did not apply to the defendant for this policy. The limitations of the general obligation, must, of course, have effect.
The referee, however, took the other view, that the representations of the application, were to be examined, as if finally made on May 30, 1873, when the policy of the Empire was issued upon it, and based his conclusion upon that position. It is not necessary to give attention to the specific exceptions, that relate to this. They were such, that clearly the conclusion of the referee, that the defendant was liable, is not supported by the facts found by him.
It was conceded by the learned counsel for the appellant, that the defense could only be sustained by proof that the representations were willfully and fraudulently untrue. By a special clause, the policy was not made void by the mere falsity of the representations, unless that falsity was discovered by the defendant, within one year from the date of the policy. As it was not proven to have been discovered within that time, the defendant undertook to prove that the representation was willfully and fraudulently false. No attention was given on the trial, or on this appeal, specifically to the inquiry, as to the possibility of showing that the application was willfully and fraudulently false on October 2, 1872, when it was made part of the policy in action, if as matter of fact, the plaintiff, oilier husband, did not then know of the particular form or mode of taking out the policy. Nevertheless, there was testimony in the case, on which the referee could have found that the parties did know the form *302 and mode, and the defendant did give, and offer evidence to show, that the parties did know, that the contents of the representations were not true.
The policy was based upon a consideration paid, and to be paid, by the plaintiff, and its amount was payable to her. It may be granted then, that the declaration of the husband, would be hearsay testimony, as to the plaintiff, and incompetent in this case, to the same extent as hearsay testimony is in any case. But the limitations of the general rule are to be observed, and the declarations are admissible, when the fact of the making of such declaration tends to prove any material issue, and when to establish that fact competently, it is not necessary that the person making the declaration be under oath, and subject to cross-examination.
In this case, the policy was issued upon the representations made by both the plaintiff and her husband.
If there was willful falsity as to these, on the part of the husband, the policy would be avoided, although the plaintiff was innocent of willful falsehood.
The defendant, therefore, had the right to give evidence of declarations made by the husband, as to his having at the time of the declaration, such bodily and mental feelings, as would of themselves, or by help of other testimony, show the then present existence of a disease or malady which had been warranted against, within the proper space of time. Also, the admission by the plaintiff, that the deceased had made such declarations, was competent against her.
The declarations of the deceased could not be used beyond this, to show he was subject, or had been subject to the disease; but if testimony had been given, either of the kind indicated, or in some other competent mode, which tended to prove the existence of the disease, then I am further of the opinion, that it was competent to *303 give testimony that the deceased had said that he had had such a disease, for the-purpose of showing his knowledge, and means of knowledge of the facts, at the time of the making of the application. This is relevant to the question of willful falsity.
If these propositions be correct, certain exceptions of the defendant should be sustained. By defendant’s case, the deceased was shown to be, on June 1, 1873 (the day after the Empire policy was made), very weak and suffering from a cough. Dr. Henngler was then called in. Evidence was given to show that the assured was then attacked by diabetes. The defendant’s counsel asked of a witness, “Were you after-wards informed by Mr. Gahen (the deceased) as to the result of the doctor’s investigation?” The question was overruled. We think it was competent, as it tended to show the deceased’s knowledge of the existence of a serious malady as to which competent testimony beyond his own declarations was given. We have deemed that the representations were warranted true on October 3, 1873. The deceased then represented that within seven years he had not had a sickness or disease for which a physician had attended him. In the effort to show that this representation was willfully false on the part of the deceased, it was proper to show his knowledge of the facts before that time, and the character of the facts, as to the impression they were likely to make on his mind. For like reasons, the defendant should have been permitted to show what the plaintiff had told a witness as to the doctor discovering the character of the disease, in a certain way. A witness was asked, after showing that a doctor was in attendance upon the assured, in the summer of 1873, “ what did he (the assured) say was the matter with him?” The question was overruled. Although this may not have been competent to show the disease, it was competent for the purpose of show *304 ing that the facts were so deeply impressed on the mind of the deceased, that a false statement made thereafter, as to them, would probably be willfully false. There were other exceptions of the kind, which it is not necessary to notice, as what has been said is applicable to them. The rulings of the referee on these points were doubtless affected by the view he had, that the representations were only warranted true on and before the time the Empire Company made its policy.
In the course of the trial, the defendant offered the deposition of Dr. Henngler, already named as the doctor who attended the deceased in the summer of 1872. The plaintiff objected to the admission of the testimony, on the ground of the statute (2 R. S. 406, § 73 [Edmond’s Ed. 422]), “No person duly authorized to practice physic or surgery shall be allowed to disclose any information, which he may have acquired in attending any patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him, as a surgeon.” I am of opinion that the referee properly excluded the deposition. The counsel for appellants argues that the death of the patient annuls the applicability of the statute. The argument is, that the privilege of preventing the disclosure of a professional communication, is personal to the party making it; and the decease of the party entitled to avail himself of it, puts it beyond the possibility to assert the privilege. I do not feel the force of this. The impossibility of asserting a privilege might be caused by other things than death ; for instance, insanity. The true position is, that the statute makes a peremptory rule, but as the rule is made for the benefit of the patient, he may waive the right given to him. Until there is such a waiver, the law is as plain as words can be, that the physician shall not be allowed to testify. Nor do I think, that if the physician gained *305 his knowledge in the presence of a wife of the patient, or of a person nursing the patient, or of an assistant, the physician should be allowed to testify. It is not like the case of the statute forbidding evidence by parties of declarations of deceased persons, under certain circumstances. That rule has regard to the credibility of the testimony as to the declarations. In the present case, the statute seeks to give to a sick man a security that what he says to his doctor shall not be testified to unless by his consent. The presence of third parties could only be used, as allowing the doctor to testify, because such presence was a waiver of the secrecy which is the patient’s protection. It should not be deemed a waiver, however, whenever their presence is in aid of the sick man, because then it does not appear that declarations made before them evince that the patient was willing to renounce the secrecy secured by the statute.
The counsel for respondent argues that by uncontroverted testimony, the defendant has waived the defense made, viz.: the avoidance of the policy, because it appears that an instalment of premiums was received, after the time the answer alleges the defendant came to the knowledge of the alleged falsity of the representations. I cannot, come to this result. The answer says the defend mt came to a knowledge of the falsity within a year before October 2, 1873, but there is nothing to bind the defendant to any particular time of the year. It may have been the first of October, or the last of September, and the premium was paid as early as September 29. After coming to a knowledge of the falsity, nothing was done by the company in affirmance of the policy. The lapse of time, thereafter, was not, at least, sufficiently great to make a waiver as matter of law, even if mere lapse of time was sufficient to sustain a finding that the defendant had waived the avoidance of the policy, as to which there was no argument on the appeal,
*306 The judgment should be reversed, the order of reference set aside, and a new trial had, with costs to appellant, to abide event.
Curtis, J., concurred.